UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEVIN DCOSTA,                          :
                                       :
          Petitioner,                  :        Civil Action No. 20-15029 (KSH)
                                       :
    v.                                 :
                                       :              OPINION
UNITED STATES OF AMERICA,              :
                                       :
          Respondent.                  :
                                       :
_____    :

This matter has been opened to the Court by Kevin D'Costa's[1] *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (*See* D.E. 1.) For the reasons below, the Court denies both the motion and a certificate of appealability. In advance of explaining the reasons for its ruling, the Court notes that, according to the Federal Bureau of Prisons (BOP) inmate locator, D'Costa was released from BOP custody on April 4, 2024. BOP, BOP Register No. 71958-050, https://www.bop./inmateloc/ (last visited Oct. 1, 2024). However, his release from incarceration does not moot this § 2255 motion because D'Costa is currently serving a three-year term of supervised release. *See, e.g.*, *Fatiga v. Warden Fairton FCI*, No. 19-2776, 2024 WL 1155764, at *1 (3d Cir. Mar. 18, 2024) (per curiam) ("A defendant enjoys a presumption of collateral consequences when he challenges his criminal conviction . . . while he is serving a term of parole, probation or supervised release." (quoting *United States v. Jackson*, 523 U.S. 234, 241-42 (3d Cir. 2008)). Indeed, D'Costa's term of supervised release has already generated an order

_____

[1] On the dockets for this § 2255 proceeding and the underlying criminal case, and in his criminal judgment, petitioner's name is spelled as "DCosta." (Crim. No. 18-603, Docket; Civ. No. 20-15029, Docket; Crim. No. 18-603, D.E. 13.) However, Petitioner and the Third Circuit spell his name as "D'Costa." (*See, e.g.*, Civ. No. 20-15029, D.E. 1 at 13-14); *United States v. D'Costa*, 821 F. App'x 165 (3d Cir. 2020). This Court will do the same.

modifying the conditions of supervision. (Crim. No. 18-603, D.E. 37 (June 25, 2024 order modifying alcohol testing and treatment conditions of supervised release and noting that three-year supervised release period commenced on April 4, 2024).)

## I.    FACTUAL & PROCEDURAL BACKGROUND

According to the Pre-Sentence Investigation Report (PSR), on or about May 24, 2018, Irvington police officers observed a car traveling at night with two tinted windows and no lighted lamps in violation of New Jersey motor vehicle laws. (*See* PSR ¶¶ 7-11.) Conducting a traffic stop, the officers approached the driver, identified as D'Costa, and smelled a strong odor of marijuana coming from the inside of the car. D'Costa was asked to exit the car, and a search of the vehicle revealed a bag of marijuana and an operable handgun loaded with ammunition. He was charged in state court with unlawful possession of a firearm and possession of marijuana, but the charges were dismissed in favor of federal prosecution. The investigation also showed that, on May 19, 2014, D'Costa was convicted in the Superior Court of New Jersey, Essex County, of unlawful possession of a weapon, which was punishable by imprisonment for a term exceeding one year.

On October 5, 2018, D'Costa was indicted on one count of being a felon in possession of a firearm under 18 U.S.C. § 924(a)(2). (Crim. No. 18-603, D.E. 1.) On June 12, 2019, he pleaded guilty to the sole count in the indictment without a negotiated plea agreement. (D.E. 9, 18.)

At his plea hearing, D'Costa's counsel noted that her client had recently requested from her an additional copy of the discovery and that he believed that there may be some radio dispatch records and "some dash cams or some body cams" that she did not have in her possession. (Civ. No. 20-15029, D.E. 6-1 at 4:2-9 (Ex. A - Plea Tr.).) Counsel explained that she had spoken with the prosecutor to make sure that discovery was complete, and she had asked if there were any dash or body cameras. (*Id.* at 4:10-13.) According to defense counsel, "Irvington does not have dash

2

cams and body cams is what [the prosecutor] has been told, as far as them rolling out different police departments that are being equipped with this equipment, Irvington does not have those items." (*Id.* at 4:14-18.) As to dispatch records, she was told that the FBI had reached out to Irvington but had not received an answer. (*Id.* at 4:19-22.) Counsel stated that there was a question as to whether D'Costa would like to proceed with his plea without knowing whether there were or were not dispatch records. (*Id.* at 5:6-16.) She added that "[t]he government has assured me that there are no body cams or dash cams." (*Id.* at 5:7-9.) The prosecutor explained that he had turned over all of the discovery in his possession, there is a process in place to ensure that the police department records were obtained, a request was submitted to Irvington for all of their records, and he had discussions with the chief assistant county prosecutor to make sure that the government had all of the state's discovery. (*Id.* at 5:23-7:3.) He was "fairly certain" that they had everything in this case. (*Id.* at 6:25-7:3.)

The Court asked defense counsel to consult with D'Costa and determine if there were any questions regarding this discussion. (*Id.* at 7:4-8.) Following an off-the-record conversation, counsel stated that her client wished to proceed with the plea. (*Id.* at 7:8-12.) In his plea colloquy, D'Costa confirmed that he had a conversation with his attorney regarding the amount of information turned over by the state and federal prosecutors and that the prosecutor had explained that there were no dispatch records, but he could not be certain. (*Id.* at 11:20-12:8.) D'Costa stated that he was willing to go forward with his plea without further investigating the dispatch records. (*Id.* at 12:9-12.) He acknowledged that he had thoroughly discussed the charges with his attorney and was satisfied with her representation. (*Id.* 11:13-19, 14:13-19.)

The Court requested that the prosecutor indicate "what the penalties that are set forth in the statute are, and what, from your estimation, Mr. D'Costa is facing by way of the sentencing

3

guidelines, and I'm going to talk about the sentencing guidelines with him." (*Id.* at 13:3-8.) The prosecutor stated that, "[w]ith respect to the statutory penalties, he faces a maximum of ten years in prison," and "[t]here is no minimum term of incarceration in connection with that offense." (*Id.* at 13:22-24.) He then reviewed how the sentencing range would be calculated under the Sentencing Guidelines and explained that, under the government's calculation, the sentencing range would be 70 to 87 months. (*Id.* at 13:24-14:10.) D'Costa's counsel concurred with the government's calculation of the Guidelines range and indicated that she had advised him that the range would be 70 to 87 or 77 to 96 months. (*Id.* at 14:12-17.) The Court then provided D'Costa with an explanation of the federal sentencing procedures and the consequences of federal sentencing. (*Id.* at 15:4-22:7.) According to D'Costa, no promises had been made as to what sentence he might receive in this case, no one had forced him into entering a guilty plea, he had not entered into any other agreement that had not been written down and put on the record, and he knew he was giving up his right to plead not guilty, go to trial, and, if convicted, file an appeal. (*Id.* at 14:19-15:3, 22:8-23:15.) He also indicated that he understood what the Court was "going to be doing" in sentencing him. (*Id.* at 18:22-24.)

The prosecutor identified the elements of the offense: D'Costa was in possession of a firearm, that firearm was operable, it traveled in interstate commerce, D'Costa knowingly possessed that firearm, and he had previously been convicted of an offense for which he could have served more than one year in prison. (*Id.* at 23:20-24:2.) D'Costa admitted on the record that he knowingly possessed a loaded firearm. (*Id.* at 24:19-25:3.) The Court then asked D'Costa about his prior 2014 state court conviction:

> THE COURT: Now, back on May 19, 2014, were you convicted, in the Superior Court of New Jersey in Essex County with unlawful possession of a weapon in violation of the New Jersey statutes?

THE DEFENDANT: Yes, ma'am.

THE COURT: Were you aware at the time of your plea to those charges that you were exposed to being imprisoned for more than one year?

THE DEFENDANT: Yes. Yes, ma'am.

(*Id.* at 25:4-12.)

D'Costa pleaded guilty, and the Court accepted his plea. (*Id.* at 25:21-27:5.)

After the entry of D'Costa's guilty plea, the United States Probation Office finalized the PSR on August 12, 2019. (PSR at 31.) It calculated a Sentencing Guidelines range of 77 to 96 months imprisonment. (PSR ¶¶ 16-43.) According to the PSR, D'Costa had pleaded guilty to several state charges punishable by imprisonment for a term exceeding one year. (*Id.* ¶¶ 31-42.) He was sentenced to concurrent three years imprisonment for two counts of possession with intent a controlled dangerous substance near school property in 2000; four years imprisonment for possession with intent to distribute a controlled dangerous substance near school property in 2000; four years imprisonment for possession with intent to distribute heroin in 2002; concurrent terms of 18 months imprisonment for possession with intent to distribute marijuana and resisting arrest in 2007; and six years imprisonment for unlawful possession of a weapon in 2014. (*Id.* ¶¶ 33-35, 37, 42.) The PSR further indicated that he had served terms of imprisonment exceeding one year on at least five of his convictions. (*Id.*)

On September 18, 2019, the Court denied D'Costa's request for a downward variance and sentenced him to 77 months imprisonment and a 36-month term of supervised release. (Crim. No. 18-603, D.E. 12-13, 18.) D'Costa filed a timely appeal, challenging the substantive reasonableness of the sentence. *United States v. D'Costa*, 821 F. App'x 165, 166 (3d Cir. 2020). On September 9, 2020, the Third Circuit affirmed. *Id.*

On October 7, 2020, *see, e.g.*, *See United States v. Delgado,* 363 F. App'x 853, 854 n. 1 (3d Cir.2010) (applying the "prison mailbox rule" to the filing date of a § 2255 motion), D'Costa filed a *pro se* motion to vacate, set aside, or correct the sentence under § 2255. (Civ. No. 20-15029, D.E. 1.) He later filed a memorandum of law in support of his motion on November 16, 2020. (D.E. 2.) A declaration signed by D'Costa was attached to his memorandum of law as an exhibit. (D.E. 2 at 17-18 (Ex. B)) as well as a copy of the Irvington police's incident report and property and evidence receipt form (D.E. 2 at 23-26 (Ex. D)). The government filed its answer on February 5, 2021, and D'Costa filed a reply on March 2, 2021. (D.E. Nos. 6-7.)

## II.    <u>STANDARD OF REVIEW</u>

Under § 2255, a federal prisoner may obtain relief if "the court finds . . . [t]here has been such a denial or infringement of the constitutional rights as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)) (citing R. Governing § 2255 Cases R. 4(b)). *Pro se* motions for relief under § 2255 must also be liberally construed in favor of the petitioner. *See, e.g.*, *United States v. Garth*, 188 F.3d 99, 108 (3d Cir. 1999). However, the petitioner bears the burden of establishing his entitled to relief and, because a § 2255 motion is a collateral attack on a sentence, must clear a higher hurdle than would exist on direct appeal. *See, e.g.*, *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014); *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). The motion may be dismissed without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief. *See,*

*e.g.*, § 2255(b); *Lieu v. United States*, No. 11-4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013).

### III.    **DISCUSSION**

In his § 2255 motion, D'Costa raises four claims of ineffective assistance of counsel.[2] (Civ. No. 20-15029, D.E. 1 at 4-14.) The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Under the familiar standard, this means the right to the effective assistance of counsel, and counsel can deprive a defendant of that right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687-88, 694. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 669. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Second, the defendant must show that he suffered prejudice due to the alleged ineffective assistance. *Id.* at 693. However, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* To establish prejudice, the defendant must show that "there is a reasonable

---

[2] The government argues that the motion is time barred under the applicable one-year limitations period because the facts supporting D'Costa's claims were known to him when his conviction allegedly became final on September 18, 2019, and his motion was not filed until October 27, 2020. (D.E. 6 at 4); 28 U.S.C. § 2255(f)(4) (stating that limitations period shall run, inter alia, from the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence). However, the conviction became final on December 14, 2020, when the ninety-day time period for filing a petition for certiorari from the Third Circuit's September 14, 2020 decision affirming the judgment of sentence expired. *See, e.g.*, *Clay v. United States*, 537 U.S. 522, 525-32 (2003). Because D'Costa had filed his motion on October 7, 2020, it is timely.

probability that the result of the trial would have been different absent the deficient act or omission." *Hinton v. Alabama*, 571 U.S. 263, 264 (2014) (per curiam).

The same two-part *Strickland* standard, described above, is applicable to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the plea context, "counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2014). The defendant must also show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (quoting *Hill*, 474 U.S. at 59).

### a. The Rule 11 Claims

In his first ground for relief, D'Costa claims that his guilty plea is invalid because neither his trial counsel nor the Court told him the mandatory minimum or the mandatory maximum sentence he would face if he proceeded to trial. (D.E. 1 at 4.) He contends that his lawyer "specifically told me I could even receive[] 'one day' if I went to trial; it was 'entirely up to the judge.'" (*Id.*) Defense counsel also purportedly told him that the judge at his arraignment misspoke by stating that the maximum penalty was ten years because "conviction carries 'up to 20 years' in prison." (D.E. 2 at 5 (quoting D.E. 2 at 17).) According to D'Costa, his attorney provided ineffective assistance by failing to object to the Rule 11 violation and to raise this issue on direct appeal. (*Id.* at 3-6.) D'Costa declares that, if he had known that he only faced a ten-year sentence, he would have proceeded to trial. (*Id.* at 17.)

"Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court." Fed. R. Crim. P. 11(b)(1). "During this address, the court must inform the defendant of, and determine that the

defendant understands . . . (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release; [and] (I) any mandatory minimum penalty." *Id.* Although D'Costa claims that "[n]either the [C]ourt [n]or the government prosecutor advised me as to the max[imum] amount of time I faced if I went to trial" (D.E. 2 at 17), the record conclusively shows that the prosecutor did inform D'Costa of the maximum possible penalty and any mandatory minimum penalty. The Court asked the prosecutor "to indicate" the statutory penalties, and the prosecutor stated the following: "With respect to the statutory penalties, he faces a maximum of ten years in prison. There is no minimum term of incarceration in connection with that offense." (D.E. 6-1 at 13:4-5, 13:22-24.)

D'Costa argues that the Court violated Rule 11(b)(1)(H) because the rule states that "the court must address the defendant personally in open court" and "the court must inform the defendant" of "the maximum possible penalty." (D.E. 7 at 2-4 (quoting Fed. R. Crim. P. 11(b)(1)(H)). However, this alleged error did not prejudice D'Costa because "[t]he record demonstrates that [D'Costa] knew of his maximum sentencing exposure, notwithstanding the Court's alleged failure to explicitly communicate that information." *United States v. Holcomb*, 390 F. App'x 117, 120 (3d Cir. 2010). As D'Costa acknowledges, his guilty plea is valid if the record contains another "source by which the relevant information was given to petitioner." (D.E. 2 at 4; D.E. 7 at 4 (quoting *United States v. Monac*, 120 F. App'x 924 (3d Cir. 2005)). Here, where the Court directed the prosecutor to "indicate to [the Court] the statutory penalties" (D.E. 6-1 at 13:4-5), the exchange still constituted a source—on the record in open court at his plea hearing—by which D'Costa received information regarding the applicable maximum possible penalty. He cannot show a reasonable probability that the alleged violation constituted the but-for cause of his decision to plead guilty "if he was aware of the omitted information through other means."

*Holcomb*, 390 F. App'x at 120 (citing *United States v. Dominguez Benitez*, 542 U.S. 74 (2004)) (concluding on direct appeal that defendant "did not show prejudice to his substantial rights and therefore cannot establish reversible plain error in violation of Rule 11").

Accordingly, D'Costa cannot show that he was prejudiced by his counsel's failure to object to or challenge on appeal the Court's alleged Rule 11 error. To the extent that he claims ineffective assistance of counsel based on his attorney's alleged statements to him that the Court could sentence him to "one day" in prison and that the judge at his arraignment misspoke by stating that he faced a ten-year maximum sentence (D.E. 2 at 5; D.E. 7 at 5), any error or deficiency on the part of counsel was cured by the plea colloquy. *See, e.g. United States v. Fazio*, 795 F.3d 421, 428 (3d Cir. 2015) ("[A]ny possible error in plea counsel's advice to Fazio was cured by the plea agreement and at the plea colloquy"). In addition to explaining that he faced a ten-year maximum penalty, the prosecutor stated that "[t]here is no minimum term of incarceration." (D.E. 6-1 at 13:22-24.) The prosecutor also explained that the government calculated a Guidelines range of 70 to 87 months, and D'Costa's counsel stated that she advised D'Costa that the range was either 70 to 87 months or 77 to 96 months. (*Id.* at 13:22-14:17.) The Court then discussed at length the sentencing process and reiterated that the sentencing range could be anywhere from 70 to 96 months. (*Id.* at 15:4-22:7.) D'Costa stated that he understood the sentencing process, and he acknowledged that no promises had been made to him as to what sentence he might receive. (*Id.* at 14:19-21, 18:22-24.)

Because D'Costa has failed to show any prejudice caused by the Court's alleged Rule 11 error and his counsel's allegedly deficient performance, the Court denies D'Costa's first ground for relief.[3]

---

[3] The plea application, which was signed by D'Costa at the plea hearing, and the PSR stated that the maximum statutory sentence was ten years imprisonment. (Crim. No. 18-603, D.E. 9 ¶ 23; PSR

**b. The *Rehaif* Claims**

In his second ground for relief, D'Costa claims that he "is Actually-Innocent of Being a Felon-in-Possession Based on New Statutory Interpretation of Rehaif v. United States; Ineffective Assistance of Counsel, re: Rehaif Issues." (D.E. 1 at 5.) He purportedly was convicted of a non-existent crime because "he never <u>knew</u> that the crime was a 'felony.'" (*Id.* (emphasis in original).) He claims that his attorney never told him that knowledge of his prior felony status constitutes an element of the crime and, despite knowing about the pending *Rehaif* case (which was decided by the Supreme Court nine days after the plea hearing), she neither told him about the case, explained its significance, nor requested a continuance. (*Id.*) According to D'Costa, "[h]ad I known [proof that the defendant was aware his felony conviction prohibited him from possessing a weapon] was required by law, I would have proceeded to trial." (D.E. 2 at 18.) He further declares that he specifically asked his lawyer about the possible effects of *Rehaif* on his plea and whether they could wait until after the decision was made. (*Id.*) Counsel allegedly told him that "there 'wasn't really a good chance' that the Supreme Court would require the government to prove other elements" and that "it was too late to change my mind." (*Id.*) In addition, D'Costa asserts that the government did not mention that it had to prove that he knew that Petitioner was a "convicted felon" when it described the elements of the crime during the plea hearing. (*Id.* at 9.)

---

at 1, ¶ 81) According to D'Costa, the Court considered the application only after it had accepted the guilty plea, he never had a chance to read or have the document read to him, no one mentioned mandatory minimum or maximum sentences at the sentencing hearing, he did not review the PSR with his lawyer prior to sentencing, and the Court never asked him whether his lawyer had read or went over the PSR with him. (Civ. No. 20-15029, D.E. 1 at 4.) He thereby contends that neither the plea application nor the PSR could constitute an "other source" for the required information under Rule 11. (D.E. 2 at 4-5.) Because the Court finds that he was informed of his sentencing exposure at the plea hearing, the Court need not—and does not—rely on the contents of these documents in its prejudice evaluation.

D'Costa similarly claims in his fourth ground that his counsel provided ineffective assistance of counsel because she did not challenge the indictment's failure to allege the specific "prior felony conviction" for his charge and that there is no evidence showing that the grand jury relied on the same prior conviction that the government used at the plea hearing. (D.E. 1 at 8.) He further contends counsel should have raised this challenge to the indictment on direct appeal. (D.E. 2 at 8.)

The *Rehaif*-related claims are based on a fundamental misunderstanding of 18 U.S.C. § 922(g) and "felon-in-possession" case law.

Section 922(g)(1) provides that it "shall be unlawful for any person . . . who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year" to "ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). In *Rehaif v. United States*, 588 U.S. 225 (2019), the Supreme Court held that the government "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it," *id.* at 227.

D'Costa indicates that, under *Rehaif*, the indictment must allege, and the government must prove, that: (i) the defendant knew he was convicted of a crime punishable by imprisonment exceeding one year; (ii) he knew he could not possess a firearm because of this conviction at the time he possessed it; and (iii) he specifically knew he could not possess a firearm because of this conviction at the time he possessed it due to the fact that his prior conviction was a "felony." (*See, e.g.*, D.E. 1 at 5; D.E. 2 at 7-8.) However, it is well established that "[t]he government is not required to prove that the defendant '*knew* he could not legally possess a firearm.'" *Cormier*, 2022

12

WL 2231597, at *6 (emphasis in original) (quoting *United States v. Boyd*, 999 F.3d 171, 182 (3d Cir. 2021)). "The [*Rehaif*] Court held only that the government must prove the defendant knew of his relevant status—in [this] case, his status as a convicted felon—when he possessed the firearm." *Id.* (citing *Greer v. United States*, 593 U.S. 503, 505-06 (2021)). While the case law refers to the defendant's knowledge of his status as a convicted felon, the use of the "felony" terminology does not mean that the defendant must know he was a "felon." Instead, it is a shorthand way of referring to "the relevant status" under § 922(g)(1), specifically a conviction in any court of a crime punishable by imprisonment for a term exceeding one year. In fact, this statutory provision does not mention a "felony" or a "felon," and federal law defines a felony as an offense punishable by a maximum term of either death or more than one year of imprisonment, *see, e.g.*, 18 U.S.C. § 3559(a)(1)-(5).

Under this framework, D'Costa cannot establish prejudice because he admitted on the record that he knew of his relevant status under § 922(g)(1) and the PSR establishes that he had several separate prior convictions for which he was sentenced to terms of imprisonment exceeding one year. At his plea hearing, the Court stated as part of the factual basis colloquy that, "back on May 19, 2014," he was "convicted, in the Superior Court of New Jersey in Essex County with unlawful possession of a weapon in violation of the New Jersey statues." (D.E. 6-1 at 25:4-8.) The Court asked D'Costa if he was "aware at the time of [his] plea to those charges that [he was] exposed to being imprisoned for more than one year." (*Id.* at 25:9-11.) D'Costa stated, "Yes. Yes, ma'am." (*Id.* at 25:12.) According to the PSR, he also served terms of imprisonment exceeding one year on five of his state convictions. (PSR ¶ 33-35, 37, 42.) In his § 2255 motion, D'Costa admits that he "knew [the New Jersey gun charge] carried a year . . . because I served more than a year." (D.E. 1 at 6.)

D'Costa compares his admissions at the plea hearing to the stipulations that the Third Circuit found to be insufficient by themselves to sustain the felon-in-possession convictions on plain error review in *United States v. Nasir*, 982 F.3d 144, 171-74 (3d Cir. 2020) (en banc), and *United States v. Hill*, 836 F. App'x 98, 101 n.4 (3d Cir. 2020). (D.E. 7 at 9.) These stated that the respective defendant was convicted of a crime punishable by a term of imprisonment exceeding one year. He also argues that *Nasar* and *Hill* preclude the court from considering evidence not submitted to the finder of fact at the relevant time (in this case, on or before the entry of the guilty plea). (*Id.*)

But unlike the defendants in *Nasir* and *Hill*, D'Costa did not merely admit that he was convicted of a crime punishable by more than a year in prison—he also acknowledged that he was aware at the time he pled guilty to the prior offense that he was exposed to a term of imprisonment of more than one year. In addition, the Supreme Court vacated the Third Circuit's judgment in *Nasir* and remanded for further consideration in light of *Greer v. United States*, 593 U.S. 503 (2021). *United States v. Nasir*, 142 S. Ct. 56, 56 (2021) (mem.). On remand, the Third Circuit upheld the § 922(g) conviction because it concluded that Nasir's line of reasoning "was struck down by the Supreme Court in *Greer*, [593 U.S. at 506-08], and requires no further discussion." *United States v. Nasir*, 17 F.4th 459, 464 n.4 (3d Cir. 2021) (en banc). Likewise, the Third Circuit granted panel rehearing in *Hill* and determined that, "even if there were an indictment error [on account of its failure to allege that the defendant knew he was a felon at the time he possessed a firearm], it is not plain error that requires disturbing the judgment because appellant cannot demonstrate prejudice [under *Greer*]." *United States v. Hill,* 854 F. App'x 446, 446-47 (3d Cir. 2021) (mem.). The decision pointed out that the *Greer* Court concluded that the defendant could not demonstrate prejudice because, "'[i]f a person is a felon, he ordinarily knows he is a felon,'

14

particularly where he 'stipulated to the fact that he was a felon.'" *Id.* at 447 (quoting *Greer*, 593 U.S. at 508, 510). The Supreme Court also clarified that the court may consider the entire record, including the PSR, in conducting plain-error review. *Greer*, 593 U.S. at 510-11.

Given the evidence in the record, the Court determines that D'Costa has failed to show either that his counsel provided ineffective assistance or his actual innocence on the felon-in-possession charge. Other courts have reached the same conclusions in similar circumstances. *See, e.g.*, *United States v. Gale*, No. 19-12, 2022 WL 17821615, at *6 (W.D. Pa. Dec. 20, 2022) ("Further, Mr. Gale's admission that he did possess the weapon at issue in this case and the government's substantial evidence demonstrating Mr. Gale's knowledge of his status as a felon satisfied all of the requirements for a Section 922(g) conviction under *Rehaif* (and *Nasir*). There was simply nothing under the law defense counsel could have done to alter that fact." (citation omitted)); *United States v. Darden*, No. 15-173, 2021 WL 4476889, at *6 n.7 (E.D. Pa. Sept. 30, 2021) (concluding that record demonstrated that jury would have found defendant guilty of knowing he was a felon given undisputed evidence that he received a sentence of state imprisonment for a minimum of three years to a maximum of eight years and served more than five years); *Mathis v. United States*, No, 20-8951, 2021 WL 1783285, at *4 (D.N.J. May 5, 2021) (agreeing with government that any argument that petitioner would not have pleaded guilty was implausible given the record and that it was highly likely that the government could have proven that petitioner had served terms of imprisonment exceeding one year for ten separate convictions).

D'Costa's claims that counsel was ineffective for not challenging the indictment's alleged failure to identify a specific "prior felony conviction" and the lack of evidence showing that the grand jury relied on the same crime the government used in this case are waived because he pled guilty. *See, e.g.*, *Spruell v. United States*, No. 15-6992, 2021 WL 1712233, at *2 (D.N.J. Apr. 30,

2021) (stating that, by pleading guilty, the petitioner waives any potential ineffective assistance of counsel claims relating to counsel's failure to discover defenses prior to the guilty plea); *United States v, Wood*, No. 16-35, 2021 WL 1022693, at *12 (W.D. Pa. Mar. 17, 2021) (finding that, by pleading guilty, the petitioner waived his right to challenge all non-jurisdictional defects which could be corrected by a new indictment, including the failure to charge the petitioner's knowledge that he belonged to the relevant category of persons barred from possessing a firearm), *certificate of appealability denied*, C.A. No. 21-1836, 2021 WL 5071873 (3d Cir. Oct. 25, 2021).

Accordingly, D'Costa has failed to establish that he was prejudiced by any deficient performance on the part of his counsel. *See, e.g.*, *Cooley v. Brooks*, No. 07-285, 2009 WL 959870, at *3 (W.D. Pa. Apr. 8, 2009) (stating that habeas petitioner's own erroneous belief of the law did not sustain ineffectiveness claim). Likewise, he cannot demonstrate actual innocence. *See, e.g.*, *United States v. Cormier*, No. 15-248, 2022 WL 2231597, at *4-6 (M.D. Pa. June 21, 2022) (concluding that petitioner seeking relief based on *Rehaif* failed to show actual innocence to overcome procedural default for not raising *Rehaif* claim on direct appeal).

Accordingly, the Court denies D'Costa's second and fourth grounds for relief.[4]

### c.   The Claims Related to the Search of the Car and Alleged Surveillance Footage

In his third ground for relief, D'Costa claims that, before entering his guilty plea, he had asked his lawyer to challenge the legality of the car search on the grounds that the arresting officers had falsified their accounts of the traffic stop. (D.E. 1 at 7.) The police incident report stated that the car was stopped because the front windows were tinted and that it was being operated without

---

[4] Under his fourth ground, D'Costa also asserts that his lawyer failed to present mitigating sentencing factors or evidence at the sentencing hearing "as to reports furnished to counsel by Dr. Jonathan Mack." (D.E. 1 at 8.)  He provides no further explanation for this allegation, and the Court summarily rejects it as impermissibly vague and conclusory. *See, e.g.*, *Spruell*, 2021 WL 1712233, at *5 (recognizing that vague and conclusory allegations for collateral relief may by summarily rejected without further investigation).

lighted lamps at night. (D.E. 2 at 24.) There was a checkmark on the report indicating "Camera Visible." (*Id.* at 23.) D'Costa asserts that he told his attorney that the surveillance camera footage would show that his windows were down and that the officers were lying when they claimed that they were up and tinted. (D.E. 2 at 10.) He also purportedly told counsel that the arresting officer was lying about him having marijuana in the car because the reports did not list the recovery of any marijuana. (*Id.* at 10-11.) D'Costa states that, when he asked her to file a suppression motion, his attorney said it would be a "waste of time." (*Id.* at 10; D.E. 2 at 18.)

D'Costa acknowledges that, at the plea hearing, his lawyer made known to the Court "my belief that surveillance footage and dash/body camera audio was available and not turned over" and that the Court "asked my lawyer to confer with me on the matter of pursuing trial/plea without knowing existence of the evidence." (D.E. 1 at 7.) According to D'Costa, "[w]hen I told my lawyer I wanted to proceed, she assured me that I would still be able to raise any claim relating to the search 'on appeal,' and then told me: 'If you don't accept the plea, you cannot argue the matter on appeal.'" (*Id.; see also* D.E. 2 at 11, 18.) He alleges that his lawyer misled him as to his ability to challenge the search and failed to seek a *Franks* hearing or object to the *Brady* violations. (D.E. 1 at 7.) He also insists that he only pled guilty because of counsel's statement. (D.E. 2 at 11.)

First, the Court concludes that, by pleading guilty, D'Costa waived any claims of ineffective assistance of counsel to the extent that they do not relate to the knowing and voluntary nature of his guilty plea. A defendant who enters a counseled, intelligent, and voluntary plea agreement "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "By pleading guilty, Petitioner not only waived his right to raise any affirmative defenses at trial, he also waived any potential ineffective assistance of counsel claims relating to counsel's

failure to discover [or present] those defenses prior to the guilty plea." *Spruell*, 2021 WL 1712233, at *2 (citing *Miller v. Janecka*, 558 F. App'x 800, 803 (10th Cir. 2014); *Ghani v. Holder*, 557 F.3d 836, 839 (7th Cir. 2009); *Lupinacci v. New Jersey*, No. 13-5578, 2015 WL 505880, at *4 (D.N.J. Feb. 6, 2015)). To the extent that D'Costa claims that his counsel was ineffective because she failed to file a motion to suppress, request a *Franks* hearing, or raise a *Brady* objection, such claims are waived.

Second, D'Costa challenges the knowing and voluntary nature of his guilty plea based on his counsel's alleged ineffectiveness in failing to move to suppress and in allegedly misleading him into believing that he could raise the claims related to the traffic stop and search and the alleged surveillance footage on appeal if, and only if, he accepted the plea. D'Costa must demonstrate there is a reasonable probability that, but for counsel's defective advice, he would not have pleaded guilty and would have insisted on going to trial. *See, e.g.*, *Jesus-Nunez*, 576 F. App'x at 106. Given the statements made by his counsel, the prosecutor, and D'Costa at the plea hearing, the benefit he received from pleading guilty, and the futility of any claims for relief based on alleged missing footage and the allegedly illegal traffic stop and search, he cannot meet this burden.

Both defense counsel and the prosecutor described on the record the discovery process in this case. At the beginning of the plea hearing, D'Costa's counsel exercised reasonable diligence by raising the specific issue of whether there were additional materials from the Irvington police, including dash or body camera footage. (D.E. 6-1 at 4:2-22.) She explained that D'Costa believed there could be some dispatch records and camera footage that had not been produced. (*Id.* at 4:6-8.) She accordingly asked the prosecutor if there were "any dash cams or any body cams," and the prosecutor told her that Irvington does not have dash or body cameras. (*Id.* at 4:10-18.)

The prosecutor then confirmed on the record that all discovery had been turned over, described the process used to obtain records from a municipal police department, and said that he also had reached out to the chief assistant prosecutor in Essex County to ensure that the government had everything in the state's possession. (*Id.* at 5:23-7:3.) Following the discussion regarding discovery and the (non-)existence of camera footage, and having consulted with her client off the record, counsel for D'Costa informed the Court that he would like to proceed with the plea. (*Id.* at 7:5-11.)

The statements on the record at the plea hearing conclusively establish that no footage exists and that all of the discovery had been provided to the defense. While D'Costa alleges that the footage would show that the car's windows were down, it is undisputed that there was another legal ground, besides tinted windows, for conducting the stop (the vehicle was being illegally operated without lighted lamps at night). (PSR ¶ 8); *Spruell*, 2021 WL 1712233, at *5-8 (rejecting challenge to knowing and voluntary nature of plea based on alleged ineffectiveness of counsel for failing to pursue petitioner's *pro se* suppression motion because merits of motion were tenuous at best). In addition, as a result of the guilty plea, D'Costa received a three-level downward adjustment in his offense level under the Sentencing Guidelines. (PSR ¶¶ 24-25); *Johnson v. United States*, No. 19-13355, 2022 WL 4366389, at *5 (D.N.J. Sept. 21, 2022) (concluding that the petitioner failed to show prejudice from counsel's failure to object to plea colloquy deficiency because plea afforded him a three-level downward adjustment for acceptance of responsibility he would not have received if convicted at trial, which was a near certainty given the abundance of evidence). Under these circumstances, it would have been irrational for D'Costa to reject the guilty plea and insist on going on trial. *See Alvarez v. United States*, No. 16-4548, 2017 WL 3288605, at

*7-8 (D.N.J. Aug. 2, 2017) (considering as part of prejudice analysis whether decision to go to trial would be irrational).

Additionally, the Court asked D'Costa about this "pretty important discussion with [his counsel] today regarding the amount of information that has been turned over by the prosecutor, state and federal." (D.E. 6-1 at 11:20-23.) Instead of disputing the representations of counsel or expressing any interest in pursuing further discovery, filing a motion to suppress, or raising a *Brady* objection, he confirmed that he had spoken with counsel, and that he was willing to go forward with the plea without any further investigation as to the existence of dispatch records. (*Id.* at 11:23-12:12.) In the plea colloquy, D'Costa explicitly stated on the record that he thoroughly discussed the charges with his counsel; he was fully satisfied with her representation in this matter; he understood the sentencing procedures; no one had forced him to enter the plea, and no promises had been made regarding the sentence he could receive; there was no part of the agreement that was not put into the record; he was giving up his rights to plead not guilty and go to trial,; and he admitted to the elements of the offense and said he was pleading guilty because he was in fact guilty of the crime charged in the indictment. (*Id.* at 11:17-26:21); *see, e.g.*, *Spruell*, 2021 WL 1712233, at *7 (rejecting claim that counsel's failure to raise Fourth Amendment issues resulted in unknowing and involuntary guilty plea because, among other things, the petitioner acknowledged that he signed the plea agreement voluntarily, understood all of the elements of the crime to which he was pleading guilty, understood that his guilty plea meant there would be no trial, and understood the penalties pertinent to his plea). He also admitted on the record that he knew he was giving up his right to appeal. (D.E. 6-1 at 23:9, 24:11-15.)

Accordingly, because his ineffectiveness claims are either waived or without merit, the Court denies D'Costa's third ground for relief.[5]

### d.  Certificate of Appealability

The Court also denies a certificate of appealability ("COA"). A petitioner may not appeal a final order in a § 2255 proceeding unless a circuit or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "That standard is met when 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner.'" *Welch v. United States*, 578 U.S. 120, 127 (2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In the Third Circuit, "[t]his showing 'is satisfied even if the claim is only debatably constitutional.'" *Clark v. United States*, 76 F.4th 206, 212 (3d Cir. 2023) (quoting *United States v. Doe*, 810 F.3d 132, 145 (3d Cir. 2015)), *cert. denied*, 144 S. Ct. 1382 (2024). Here, reasonable jurists would not find it debatable that D'Costa's constitutional rights were violated, and the Court denies a certificate of appealability.

---

[5] In his reply, D'Costa argues that an evidentiary hearing is warranted given his specific factual allegations of ineffectiveness. (D.E. 7 at 10-12.) As discussed above, the record conclusively demonstrates that he is not entitled to any relief and the Court is satisfied he his factual allegations are either belied by the record or even if accepted as true, are insufficient to support his claims for relief. An evidentiary hearing is denied. *See, e.g.*, *Lieu*, 2013 WL 4538293, at *9.

IV.    **<u>CONCLUSION</u>**

For the reasons stated in this Opinion, the Court denies D'Costa's motion for relief under

§ 2255 and denies a certificate of appealability. An appropriate Order follows.


**<u>*s/Katharine S. Hayden*</u>**
Katharine S. Hayden
United States District Judge

DATED: October 1, 2024